**FLORIDA EAST COAST RAILWAY COMPANY, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**No. 65–186–Civ–J.**

United States District Court
M. D. Florida,
Jacksonville Division.

June 24, 1966.

Fred H. Kent, Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, Fla., and A. Alvis Layne, Washington, D. C., for plaintiff.

John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., William J. Hamilton, Jr., Asst. U. S. Atty., Jacksonville, Fla., for defendant United States.

Raymond M. Zimmet, Atty., I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

John S. Cox, Cox, Grissett & Webb, Jacksonville, Fla., Richard A. Hollander, Richmond, Va., for defendant Seaboard Air Line R. Co.

Thomas C. Britton, Miami, Fla., for defendants Dade County and Greater Miami Traffic Ass'n.

## OPINION

Before JONES, Circuit Judge, and McRAE and YOUNG, District Judges.

McRAE, District Judge.

Florida East Coast Railway Company (East Coast) brought this action, seeking judicial review of an order of the Interstate Commerce Commission that requires East Coast to permit Seaboard Air Line Railroad Company (Seaboard) to operate trains over certain railroad tracks owned and used by East Coast in Miami, Florida.

Currently, both Seaboard and East Coast provide rail transportation to and from the present municipal port in Mi-

ami, using the tracks of the Miami Municipal Railroad. New port facilities are being constructed in Miami on Dodge Island, however, and all Miami port activities will be transferred to Dodge Island when these facilities are completed. The Dade County (Miami) Seaport Department has requested that both Seaboard and East Coast provide rail service to the new port.

The Seaport Department is constructing railroad track from the island to the mainland, leaving a short gap between the end of its track and an East Coast spur track. East Coast proposes to close the gap by building a connecting track. Seaboard will have no access to the new port without substantial track construction in downtown Miami unless it is able to use 3220 feet of East Coast tracks, some main line and some spur.

Seaboard, therefore, applied to the Interstate Commerce Commission under § 3(5) of the Interstate Commerce Act, 49 U.S.C. § 3(5), for permission to use these East Coast tracks. Section 3(5) provides in part:

> If the Commission finds it to be in the public interest and to be practicable, without substantially impairing the ability of a common carrier by railroad owning or entitled to the enjoyment of terminal facilities to handle its own business, it shall have power by order to require the use of any such terminal facilities, including main-line track or tracks for a reasonable distance outside of such terminal, of any common carrier by railroad, by another such carrier or other such carriers * * *.

Hearings were conducted before a hearing examiner, who recommended approval of Seaboard's application to use East Coast tracks. The Commission agreed, finding, among other things, that Seaboard's proposal was in the public interest, was practicable, and would not substantially impair the ability of East Coast to handle its own business.

Before determining whether the record considered as a whole supports these findings, we first should consider certain preliminary issues raised by East Coast: it contends that the Commission's order is not reviewable at this time, that the Commission had no jurisdiction to enter the order, and that the order deprives East Coast of property without due process of law.

Section 3(5) of the Interstate Commerce Act provides that the use of another railroad's track is to be "on such terms and for such compensation as the carriers affected may agree upon, or, in the event of a failure to agree, as the Commission may fix as just and reasonable for the use so required * * *. Such compensation shall be paid or adequately secured before the enjoyment of the use may be commenced." In light of this provision, the Commission retained jurisdiction for the purpose of reopening the proceedings and thereupon determining the proper compensation if the carriers could not reach agreement.

■■ East Coast argues, therefore, that the Commission's order is not final and hence not now reviewable. We cannot agree. "The true test [of ripeness] is the substantiality of present or imminent harm which the administrative action inflicts on the plaintiff." 3 Davis, Administrative Law § 21.07, at 176–77 (1958). See Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 424–425, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). One key factor is whether the order determines legal rights. 3 Davis, supra, at 177. The present order clearly does so, ordering one carrier to allow another carrier to use its track. This determination of the parties' legal rights may be the final action taken by the Commission in this dispute, as the parties may agree upon the terms of compensation. Most important, the effective date of the order does not depend on the establishment of the terms of compensation as long as the use of East Coast track is "adequately secured * * before the said use shall be commenced." See also Missouri-Kan.-Tex. R. R. v. Kansas City Terminal Ry., 198 I.C.C. 4, 5

(1933) (track used for 4 years before compensation settled).

East Coast's argument that the Commission had no jurisdiction under § 3(5) revolves around the interpretation of the words "terminal facilities" as used in that section. A railroad must be one "owning or entitled to the enjoyment of terminal facilities" before it can be ordered to let another railroad use the "terminal facilities, including main-line track or tracks for a reasonable distance outside of such terminal." East Coast contends that the only terminal facilities involved in this case are those owned by the Seaport Department, which facilities East Coast neither owns nor is entitled to enjoy.

■ Such a construction, however, is much too narrow. The statutory language explicitly indicates that the words "terminal facilities" do not refer solely to the terminal itself, since such facilities are said to include main-line track outside the terminal. Certainly, if main-line track may be part of the terminal facilities, spur track may be also. The key is the use to be made of the track.

■ In the present case, Seaboard proposes to use the East Coast tracks to transfer cars from the port to its freight yards, where the cars will then be switched around and made into trains with destinations outside the Miami area. East Coast will use portions of the tracks in the same way and presently uses the tracks to serve industries near its Miami terminal. The fact that East Coast also uses portions of the tracks as main-line track is irrelevant.

The fact that ownership of the terminal and ownership of the terminal facilities sought to be used are in different companies likewise is irrelevant. No policy has been advanced, and we cannot conceive of one, for limiting the statute's operation to the single-owner situation.

Under these circumstances, the tracks owned by East Coast and sought to be used by Seaboard are "terminal facilities" within the meaning of § 3(5). Ac-

cord, City of Milwaukee v. Chicago & N. W. Ry., 283 I.C.C. 311 (1951).

■ East Coast further argues that the order deprives it of property without due process of law. In order for Seaboard to move its trains on and off the East Coast tracks sought to be used, construction of a short connecting track will be desirable or possibly necessary. East Coast urges that § 1(18) of the Interstate Commerce Act requires Commission approval (using the more strict "public convenience and necessity" standard) before the connection can be built, that no request has been made to the Commission for its approval, but that the present order conclusively binds the Commission to grant such approval in the future, thereby depriving East Coast of the right to a full and fair hearing on Seaboard's application. Seaboard contends that connection comes within the § 1(22) exemption, obviating the need of Commission action.

We need not decide, however, whether the proposed construction comes within § 1(18) or § 1(22), for East Coast's complaint of the lack of due process is premature. Even if Commission approval is needed, we cannot presume that the Commission will disregard its obligations to give East Coast a fair hearing and to apply the stricter standard of "public convenience and necessity." After such a hearing, if one is needed, the Commission could, consistent with the order now under review, withhold its approval of the construction, but Seaboard would be able to serve the port by obtaining acceptance of a different type of connection or by using a preexisting, though possibly less efficient, connection. In any event, East Coast can complain about the denial of a fair hearing and the use of improper standards only after they occur. They presently have not.

■ On the merits, after considering Seaboard's proposal, East Coast's counterproposal (to let East Coast move the Seaboard traffic to and from the port), and testimony supporting various positions, including that of the intervenor Greater Miami Traffic Association (on

behalf of Dade County and the Seaport Department), the Commission made its findings, including ones that the proposed use of East Coast track by Seaboard was in the public interest, was practicable, and would not substantially impair the ability of East Coast to handle its own business. After reviewing the record, we conclude that the Commission's findings are amply supported by the record considered as a whole. The Commission's order, therefore, should be approved and the complaint should be dismissed.

Judgment will be entered for Defendants in accordance with the present opinion.